U.S. BANK, NATIONAL ASSOCIA-
TION, as Trustee, and Orix Capi-
tal Markets, L.L.C., Appellants,

v.

AMERICAN REALTY TRUST,
INC., Appellee.

No. 05–07–00328–CV.

Court of Appeals of Texas,
Dallas.

Feb. 3, 2009.

Rehearing Overruled Feb. 3, 2009.

Charles W. McGarry, Law Office of Charles McGarry, Dallas, for appellants.

William G. Arnot, III, Jeffrey Joyce, Winstead, Sechrest & Minick, P.C., Houston, Kent B. Pearson, Winstead, Sechrest & Minick, P.C., Dallas, for appellee.

Before Justices WRIGHT, O'NEILL, and FRANCIS.

**OPINION ON REHEARING**

Opinion by Justice O'NEILL.

Appellants U.S. Bank, National Association, as Trustee, and Orix Capital Markets, L.L.C. and appellee American Realty Trust, Inc. both filed motions for rehearing. We deny both motions; however, this Court will address and clarify the standard of review and result under the section titled "Fraud and Material Misrepresentation Causing $369,803.62 in Damages." Thus, we withdraw the Court's opinion dated June 12, 2008 and this is now the opinion of the Court.

The issues in this case are whether certain carve-out provisions for "waste" or "fraud or material misrepresentation" in a non-recourse loan were triggered and imposed personal liability on appellee American Realty Trust, Inc. ("ART"), acting as guarantor, for damages to appellants U.S. Bank, National Association, as trustee, and Orix Capital Markets, L.L.C., collectively known as the lender.

On appeal, appellants argue (1) the trial court erred in limiting the terms "waste" and "damage" to solely physical harm to the property; (2) it erred by eliminating $3.85 million in damages because they proved as a matter of law fraud or material misrepresentation caused the damages, or alternatively, they at least established $369,803.62 in damages; (3) the trial court's failure to find damages is against the great weight and preponderance of the evidence; and (4) they are entitled to attorneys' fees.

We affirm in part and reverse and render in part.

**Factual and Procedural Background**

The relationships of the parties involved in this appeal are as follows. Appellants are the owners and holders of a six million dollar promissory note made by an affiliate of ART, K.C. Airport Hotel, Inc., the borrower in this case. The note was secured by the real and personal property of a hotel, the Kansas City International Air-

port Holiday Inn and guaranteed by ART pursuant to an indemnity agreement. The note and guaranty were generally non-recourse except for certain exceptions or "carve-outs" under which Borrower and ART could be personally liable. The note was secured by a mortgage and security agreement/deed of trust in which Borrower pledged as collateral its sole asset, the hotel, including all of its real and personal property and tangible and intangible assets.

The hotel is a 196–unit, full-service Holiday Inn located near the Kansas City International Airport. The franchise license, or Holiday Inn "flag," was set to expire on September 24, 2002. The hotel sent Borrower a routine notice letter informing it of the expiration date in September of 2001. To relicense the hotel, Borrower was required by Holiday Inn to complete an application and obtain a Property Improvement Plan ("PIP") inspection, which would include all the necessary improvements to the property before a new franchise license could be issued. The PIP was performed in December of 2001, and the costs of estimated improvements was approximately $1.8 million.

At the heart of the parties' disagreement is who then decided not to reapply for a new franchise license with Holiday Inn. Appellants allege Borrower, through its representative Paul Coler, decided not to reapply for a license because of the cost of the PIP. Appellants further contend Borrower concluded it could spend significantly less money and change the franchise to a Clarion Hotel, despite the undisputed evidence a Holiday Inn was the better "flag." Borrower claims Holiday Inn informed it by letter dated May 2, 2002 that it did not intend to relicense the hotel. The letter stated "[b]ased on our current procedures, criteria and requirements, it is Licensor's intent not to renew the License." Borrower researched other possible flags and eventually decided to enter into a franchise agreement with Clarion. As part of the agreement, Clarion also required a PIP inspection. To comply with the inspection, Borrower requested release of $369,803.62 in an escrow fund from appellants for renovating the hotel. Appellants agreed to the request on November 8, 2002 and released the money for the flag change. Following the switch to Clarion, the occupancy and revenues declined. Borrower could not service the debt and eventually defaulted on the note, and the property was foreclosed.

Appellants assert they later learned Holiday Inn was in fact still interested in relicensing the hotel, and it was Borrower who decided not to reapply for a license. In their lawsuit, they argued the change from the Holiday Inn flag to Clarion was a breach of the note and guaranty under the "waste" and "fraud or material misrepresentation" carve-out provisions, which resulted in damages.

After a bench trial, the court entered extensive findings of fact and conclusions of law. The court determined paragraph 1(f) of the indemnity agreement, by its plain meaning and interpretation, required actual, physical damage to the hotel in order for ART to be liable under the agreement. It further concluded appellants failed to sustain their burden of proof that any acts of waste were committed on the property or that such property was damaged as a result of Borrower's intentional misconduct or gross negligence.

However, the trial court found that as a result of Borrower's material misrepresentations, appellants consented to the change in the hotel's flag from a Holiday Inn to Clarion, which caused injury to the property's value in the amount of $3.85 million, which represented the difference in the

appraised value of the hotel at foreclosure and its value had it remained a Holiday Inn at foreclosure. The trial court also awarded attorneys' fees, expenses, and pre-judgment and post-judgment interest, for a total judgment of $6,068,007.40.

After the trial court entered its final judgment, but before the parties filed all post-judgment motions, the original trial judge left the bench. The new trial judge heard ART's motion to modify or amend final judgment or alternatively for a new trial. The judge then amended the final judgment and findings of fact and conclusions of law because he did not believe appellants established causation for their fraud claim. He reduced appellants' fraud damages to nominal damages and denied attorneys' fees. This appeal followed.

### Waste

■ In their first issue, appellants argue the trial court erred in its legal construction of "waste" under paragraph 1(f) of the guaranty. Specifically, they contend waste, although not specifically defined by the guaranty, does not require actual, physical damage to the hotel because the terms of the guaranty, as intended by the parties, clearly encompass damage to intangible assets such as the franchise license. Because Borrower failed to relicense the hotel as a Holiday Inn, appellants claim waste occurred under the guaranty, and they suffered $3.85 million in damages. ART responds appellants failed to establish waste as a matter of law because waste has a specific common law meaning and requires actual, physical damage, which did not occur under these facts. *See, e.g., Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571–72 (Tex.1981) (defining waste as permanent

harm to real property). It also argues the paragraph 1(f) carve-out provision does not include any future franchise licenses that may or may not be obtained. After considering the issue, we agree with ART.

■ We review a trial court's interpretation of a contract de novo following the applicable rules of contract construction. *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 899 (Tex.App.-Dallas 2006, pet. granted); *Preston Ridge Fin. Servs. Corp. v. Tyler*, 796 S.W.2d 772, 775 (Tex.App.-Dallas 1990, writ denied) (applying rules of construction to guaranty contracts). The guaranty provides ART is personally liable for and guarantees payment to lender for the following:

> Waste committed on the Property, damage to the Property as a result of the intentional misconduct or gross negligence of Borrower or any of its principals, officers or partners, any guarantor, any indemnitor, or any agent or employee of such persons, or any removal of all or any portion of the Property in violation of the terms of the Loan Documents, to the full extent of the losses or damages incurred by Lender on account of such waste, damage, or removal.

Thus, ART could be liable for waste, damage, or removal; however, appellants do not argue damage resulted from removal. As such, we focus our analysis on whether ART committed waste or damage on the property.

■ Although waste is not defined in the guaranty, the mortgage and security agreement, executed on the same date as part of the same transaction,[1] expressly defined "property" to include physical assets such as land and improvements, and it

---

1. Agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together. *In re*

*Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex.2004).

also included contracts and intangibles as follows:

(I) All contracts and agreements now or hereafter entered into covering any part of the Land or the Improvements (collectively, the "Contracts") and all revenue, income and other benefits thereof, including without limitation, franchise agreements or license agreements with the hotel franchisor . . . .

. . .

(K) All . . . general intangibles (including, without limitation, trademarks, trade names, service marks and symbols now or hereafter used in connection with any part of the Land or the Improvements, all names by which the Land or the Improvements may be operated or known, all rights to carry on business under such names . . . ).

Appellants also rely on certain covenants in the mortgage and security agreement stating mortgagor will conduct and operate its business as presently conducted and will maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

Construing these provisions together, appellants assert Borrower was clearly required to keep the hotel operating as a Holiday Inn or as a comparable or better franchise, but failed to fulfill its obligations. By allowing the Holiday Inn franchise license to expire and failing to reapply, appellants claim Borrower committed waste on the property because the value of the franchise diminished when it became a Clarion. They also assert Borrower failed to maintain adequate capital to keep the hotel operating because it failed to spend the money needed to complete the PIP and instead went with the cheaper Clarion franchise.

After reviewing the relevant loan documents, we first note nothing within any of the documents specifically required Borrower to reapply for a franchise license with Holiday Inn. One of the covenants of the mortgagor simply states it agrees to "conduct and operate its business as presently conducted and operated," which means Borrower must continue to use the property as a hotel, but not necessarily as a Holiday Inn. Although the documents contemplate all future franchise agreements entered into would become "property," they do not include any potential franchise agreements, such as here, that never came into existence. As defined by the carve-out provision, for waste to have occurred, it must have been committed "on the property." We refuse to interpret the loan documents to mean waste can occur on potential, future property, in this case a potential franchise license, that was never entered into.

The distinction is between breaching an existing contract and renewing or reapplying for a new contract. Had Borrower terminated its franchise license with Holiday Inn prior to September 24, 2002 and then changed to a Clarion, this could possibly be waste to the existing property. However, by failing to reapply for a Holiday Inn franchise license and instead reflag as a Clarion after the Holiday Inn franchise license expired, Borrower did not commit any "waste" on the "property." If appellants wanted the hotel to remain a Holiday Inn, they should have specifically contracted for it. Consequently, a future Holiday Inn franchise that was never acquired never became part of the property in which the waste provision applied. In reaching this conclusion, we need not determine whether waste encompasses only physical damages to property or may include general intangibles such as existing franchise licenses.

Accordingly, we overrule appellants' first issue.

### Fraud or Material Misrepresentation Causing $3.85 Million in Damages

In their second issue, appellants argue the trial court erred in awarding only nominal damages for Borrower's fraud or material misrepresentation under paragraph 1(j) of the guaranty because they proved as a matter of law they suffered $3.85 million in damages. They also contend the trial court's failure to find these damages is against the great weight and preponderance of the evidence so as to be manifestly unjust. ART responds appellants failed to establish causation for $3.85 million in damages.

In its amended findings of fact and conclusions of law, the trial court found and concluded "Plaintiffs, however, did not sustain their burden of demonstrating any damages resulting from Borrower's material misrepresentations, a prerequisite to liability under Paragraph 1(j) of the Indemnity Agreement. Specifically Plaintiffs failed to demonstrate that Borrower's material misrepresentations resulted in the diminution of value of the Hotel." Appellants challenge the trial court's failure to find damages resulting from the fraud or material misrepresentations.

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict; however, they are not conclusive when a complete reporter's record appears in the appellate record. *Lewis v. Dallas Soundstage, Inc.*, 167 S.W.3d 906, 912 (Tex.App.-Dallas 2005, no pet.); *see also Bernal v. Chavez*, 198 S.W.3d 15, 18 (Tex. App.-El Paso 2006, no pet.). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Lewis,*

167 S.W.3d at 912. In doing so we do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *Id.*

Appellants bore the burden of proof on their claim; therefore, their issues for review are appropriately framed as challenges to the court's failure to find in their favor. When attacking the legal sufficiency of the evidence to support an adverse finding on an issue for which they had the burden of proof, appellants must demonstrate the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Marrs & Smith P'ship v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 13–14 (Tex.App.-El Paso 2005, pet. denied). A party attempting to overcome an adverse finding as a matter of law must surmount two hurdles. *Sterner,* 767 S.W.2d at 690; *Marrs & Smith P'ship,* 223 S.W.3d at 13–14. First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner,* 767 S.W.2d at 690. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.* Only if the contrary position is conclusively established will the point of error be sustained. *Marrs & Smith P'ship,* 223 S.W.3d at 13–14. A matter is conclusively established "only if reasonable people could not differ in their conclusions...." *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex.2005); *Intec Sys., Inc. v. Lowrey,* 230 S.W.3d 913, 919 (Tex. App.-Dallas 2007, no pet.).

In reviewing the factual sufficiency of the evidence, we consider all of the evidence in the record. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Marrs & Smith P'ship,* 223 S.W.3d at 13–14. When

a party attacks the factual sufficiency of an issue upon which it had the burden of proof, it must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Marrs & Smith P'ship*, 223 S.W.3d at 13–14. In reviewing a factual sufficiency issue, we must first examine the record to determine if there is some evidence to support the finding; if so, then we must determine whether the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* We may reverse only when we conclude the non-finding is against the great weight and preponderance of the evidence. *Id.* We are also mindful the trial court is the sole arbitrator of the credibility of the witnesses and the weight to be accorded their testimony. *Rusk v. Rusk*, 5 S.W.3d 299, 310–11 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

■ Appellants' claims are based on the carve-out provision for "fraud or material misrepresentation" in paragraph 1(j) of the guaranty, which provides ART shall be fully and personally liable for:

> Fraud or material misrepresentation by Borrower or any of its principals, officers or partners, any guarantor, any indemnitor or any agent, employee or other person authorized or apparently authorized to make statements or representations on behalf of Borrower, any principal, officer or partner of Borrower, or any guarantor or any indemnitor, to the full extent of any losses, damages, and expenses of Lender on account thereof.

Thus, appellants had to show they suffered damages, losses, and expenses on account of fraud or material misrepresentation by Borrower. *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'r & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998) (noting fraud requires a material misrepresentation, which was false, which was either known to be false when made or was asserted without knowledge of its truth, which was intended to and did induce action or inaction, which was relied upon, and caused injury).

The trial court found Borrower claimed Holiday Inn had decided not to relicense when the franchise license expired on September 24, 2002. Specifically, on July 24, 2002, Paul Coler, as representative of Borrower, sent a letter to Joni Mitchell of ORIX stating Holiday Inn had decided not to renew. In support of his statement, Coler attached a May 2, 2002 form letter he received from Heather Botwinik of Holiday Inn stating "it is [Holiday Inn's] intent not to renew the License." Testimony revealed the letter was sent to comply with certain state laws regarding franchises.

These representations were false because Borrower, not Holiday Inn, had decided to let the license expire. Specifically, on July 15, 2002, Coler told Cathy Pitchford of Holiday Inn in a telephone conversation Borrower had no intention of renewing the license because the PIP was very expensive, the economy of the local market was not performing well, and Borrower was attempting to secure another franchise. He did not say the reason for not reapplying was because of the May 2, 2002 letter. Coler sent a letter on July 15, 2002 to Pitchford memorializing their conversation and stating "we have elected to remove the property from the system...." Again, he never mentioned in the letter the reason for not reapplying was because of Holiday Inn's May 2 letter. Coler never informed appellants he sent the July 15 letter. Further, the court found Borrower had begun discussions with Clarion before receiving the May 2, 2002 Holiday Inn letter, as evidenced by an offer of receipt

of franchise information from Clarion dated May 10, 2002, indicating discussions with Clarion had been going on for some time.

The court further found the change from a Holiday Inn to a Clarion resulted in significant diminution in value of the hotel. Had the hotel remained a Holiday Inn flag, the value at the time of foreclosure would have been $6.2 million. The actual appraised value as a Clarion at the time of foreclosure, however, was $2.35 million, a difference of approximately $3.85 million. However, despite recognizing the loss in value because of the flag change, the court found these damages were not caused by Borrower's material misrepresentations. We agree.

As previously noted, appellants had no property interest in any future franchise licensing agreements and did not specifically contract for the hotel to remain a Holiday Inn. Thus, regardless of any misrepresentations Borrower made regarding who decided not to reapply for a license, the misrepresentations could not have caused $3.85 million in damages for something Borrower was not required to do, specifically, relicense as a Holiday Inn. Further, nothing in the record establishes appellants could have obtained a new Holiday Inn license. Likewise, there is no testimony that even if Borrower was willing to pay the $1.8 million necessary to comply with the Holiday Inn PIP, Holiday Inn would have renewed the license. Thus, the lack of evidence supports the trial court's finding of no fraud or material misrepresentation causing a diminution in property value; therefore, appellant's failed to conclusively establish all vital

facts in support of their fraud argument under carve-out provision 1(j). Likewise, the finding is not against the great weight and preponderance of the evidence. We conclude the trial court properly failed to find material misrepresentations or fraud caused diminution in the hotel's value. Appellant's second issue is overruled.[2]

### Fraud or Material Misrepresentation Causing $369,803.62 in Damages

■ As an alternative argument, appellants complain the trial court failed to award $369,803.62 in damages caused by Borrower's misrepresentations or fraud. This money represents the amount held in a replacement reserve account or escrow held by appellants, which they released to cover improvements necessary for the change from Holiday Inn to Clarion. They assert they proved damages as a matter of law, and the failure to award such damages is against the great weight and preponderance of the evidence. ART responds appellants did not prove the funds released from the reserve were damages caused by any fraud or material misrepresentations or alternatively, that appellants recouped their alleged damages in the foreclosure sale.

The trial court found that "Lender released $369,803.62 from the Borrower's escrow account in reliance on Coler's representations," however, the court failed to award any damages. To apply the proper standard of review when appellants had the burden to establish damages, we are placed in the position of first considering whether the trial court's failure to find that appellants suffered damages from Borrower's material misrepresentations is

---

**2.** Appellants argue that although the new trial judge had the authority to review the record and amend the judgment and findings, he should have deferred to the original trial court's findings on witness credibility because he was in the best position to consider it having sat through the trial. We need not address this issue because our conclusion of no causation does not turn on witness credibility.

legally sufficient, when in reality the trial court did find damages but failed to award them. Thus, under these facts, we need not employ the traditional legal sufficiency review for appellants' damages claim the trial court specifically found damages in finding of fact 90A. As such, appellants established their right to recover these damages as a matter of law.

In reaching this decision, we conclude ART's argument that appellants were not damaged by the misrepresentations because the released money was used to pay for capital improvements on the hotel, and appellants necessarily received the full benefit of the funds when they foreclosed on the property is without merit. ART presented no evidence the $369,803.62 was not damages. Likewise, it presented no evidence that the value of the property at the time of the foreclosure was $369,803.62 more than it would have been had appellants not released the funds or that release of the funds altered the fair market value of the property in any way. Any improvements to the hotel were made prior to release of the funds; therefore, release of the funds could not affect the fair market value of the property. Thus, any increase in value of the hotel occurred prior to Borrower defrauding appellants out of $369,803.62 by seeking reimbursement for a flag change appellants would not have allowed had they known all the facts. Therefore, this is not money appellants recouped in the foreclosure, and there is no other evidence the money was recouped through the foreclosure process. As such, the trial court erred in not awarding damages to appellants.

Having established their right to recover $369,803.62 in damages, we sustain appellants' issue.

### Attorneys' Fees

In their final issue, appellants assert they are entitled to $464,038.02 in attor-

neys' fees and expenses if they are successful in recovering damages. ART does not contest the claim "if and only if, they conclusively prove ART liable for actual damages of either $3.85 million or $369,803.62." Having concluded appellants are entitled to $369,803.62, we likewise conclude they are entitled to their attorneys' fees.

The trial court found ". . . in the event the Plaintiff should be entitled to a recovery of something more than nominal damages, the Plaintiffs' reasonable and necessary attorneys' fees and expenses incurred in prosecuting its claim against ART through the trial court level are $464,038.30." The court further found if they were entitled to something more than nominal damages, reasonable and necessary attorneys' fees on appeal to this Court would be $35,000. Because ART has not challenged the reasonableness of these fees and does not contest the amount, we conclude appellants are entitled to recovery of such fees and expenses. We sustain appellants' final issue.

### Conclusion

Having sustained appellants' issue regarding fraud or material misrepresentation causing damages in the amount of $369,803.62, the trial court's judgment awarding nominal damages is reversed, and judgment is rendered that appellants are entitled to $369,803.62. Based on this damage award, appellants are also entitled to $464,038.30 in attorneys' fees and their appellate fees. The judgment is in all other respects affirmed.