**Affirmed in part; Reversed and Remanded in part; Opinion Filed July 9, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01390-CV**

**ADAM & BARRY ALFIA, OSHI, INC., REVISED EASI, INC., & REVISED OII, INC.,**
**Appellants**
**V.**
**OVERSEAS SERVICE HAUS, INC., Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 07-14742**

## MEMORANDUM OPINION
Before Justices Lang, Myers, and Evans
Opinion by Justice Lang

Adam Alfia, Barry Alfia, OSHI, Inc., Revised EASI, Inc., and Revised OII, Inc.,

("Appellants") appeal from a take-nothing judgment on their breach-of-contract counterclaim

following a jury trial. In a single issue, Appellants contend the trial court erred by denying their

request for findings and motion for judgment as to damages and by denying their motion for new

trial on the issue of damages because there was insufficient evidence to support a deemed finding

of no damages. Overseas Service Haus, Inc. ("OSHI")[1] contends Appellants waived any

objections regarding damages because Appellants did not submit to the trial court any jury

questions addressing damages as to their breach-of-contract counterclaim. We conclude there

---

[1] Appellants styled their brief as "Adam and Barry Alfia et al v. OSHI, Inc, et al." However, no other parties to the trial court's judgment were named as appellees in Appellants' appellate brief.

was factually insufficient evidence to support the trial court's deemed finding of no damages. Accordingly, we reverse and remand for further proceedings consistent with this opinion. Because all dispositive issues are clearly settled in the law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. FACTUAL & PROCEDURAL BACKGROUND

Appellants sold the business assets of their automotive business to OSHI in 2006. The purchase price included a promissory note in the amount of $2,915,754 payable by OSHI to Appellants. That promissory note stated "[t]he lien securing this note is subordinate to the liens securing another note . . . payable to the order of Park Cities Bank." In 2007, Appellants and OSHI agreed to refinance the promissory note and transfer it from Park Cities Bank to Dallas City Bank with the First Modification Agreement ("FMA"). The FMA reduced the principal amount from $2,915,754 to $1,750,000, provided for 5% interest per annum, and extended the maturity date to October 24, 2012. As consideration for reducing the principal amount, Appellants received a lump sum amount of $550,000. As part of the refinancing transaction, Dallas City Bank, Appellants, and OSHI entered into a Subordination Agreement, which subordinated Appellants' lien to that of Dallas City Bank.

Subsequently, OSHI, R.N. Development, Inc., and Ramez Nour, former owner of OSHI, filed suit against Appellants for claims related to the sale of business assets in 2006, including conspiracy to commit fraud, common law fraud, fraudulent inducement, statutory fraud, negligence, negligent misrepresentation, civil conspiracy, breach of contract, and violation of the Texas Deceptive Trade Practices Act.[2] Dallas City Bank then filed suit against Appellants for breach of contract, arguing Appellants had breached the Subordination Agreement by attempting

---

[2] Although all the plaintiffs in the case below acted together, we will refer to actions in the trial court as those of OSHI.

to foreclose on and sell the property securing the debt underlying the FMA. Appellants denied OSHI's claims, asserted affirmative defenses, and raised counterclaims against OSHI and Dallas City Bank, including breach of contract, fraud in the inducement, common law fraud, and tortious interference with business and contractual relations. OSHI responded to Appellants' counterclaims by filing a general denial answer and raising affirmative defenses that are not relevant to our analysis.

In May 2011, the case was tried before a jury that decided against OSHI on its claims and affirmative defenses and against Appellants' counterclaim against Dallas City Bank. However, the jury answered "yes" to the two questions regarding Appellants' breach-of-contract counterclaim against OSHI. Specifically, the jury found OSHI "breached the Agreement for the Purchase and Sale of Assets with the Alfia Group by failing to make principal and interest payments." The jury also found OSHI "breached its contracts with the Alfia group." Further, the jury decided against OSHI's affirmative defenses to Appellants' breach-of-contract counterclaim. No jury questions were submitted addressing damages regarding Appellants' breach-of-contract counterclaim.

Before the jury returned with its verdict, Appellants notified the trial court of their failure to request a jury question as to damages regarding Appellants' breach-of-contract counterclaim. Appellants argued the trial court could decide the damages were established as a matter of law. The trial court judge responded, "That, I guess, can be argued after the verdict comes in and everybody's trying to submit it for a proposed judgment." After the jury delivered its verdict and was discharged, but before the trial court rendered its judgment, Appellants filed a "Request for Finding and Motion for Judgment." The motion for judgment requested the trial court find damages respecting the breach-of-contract counterclaim. In support of their request, Appellants asserted that "[t]he amount of damages [was] uncontroverted as Nour's testimony at trial was

that he paid on the revised note of $1,750,000 until the end of 2007 and made no further payments after the lawsuit was filed." Appellants summarily identified the amount of damages allegedly due without citation to the record or explanation of their calculations.[3] Without expressly ruling on Appellants' motion for judgment, the trial court rendered a take-nothing judgment on all of OSHI's claims and Appellants' counterclaims.

Appellants then filed their motion for new trial in which they requested the trial court grant a new trial on the issue of damages "and then grant them judgment as set forth herein." In their motion for new trial, Appellants explained in detail how they contended damages should be calculated, citing evidence and attaching exhibits from the trial record. However, the trial court signed an order that generally denied Appellants' motion for new trial.

On appeal, Appellants argue the trial court erred by denying their "Request for Finding and Motion for Judgment" and by denying their Motion for New Trial because there was insufficient evidence to support the trial court's deemed finding of no damages.

## II. WAIVER

First, we address OSHI's contention that "Appellants waived any objections to the damages questions which were omitted from the jury charge." According to OSHI, "Rule 279 specifically says that a party waives such a ground on appeal by failing to submit the issue to the jury." OSHI continues, "[I]t is well-settled law in Texas that if a party does not tender a jury question regarding an issue, that party waives the complaint."

---

[3] Appellants' motion for judgment stated in part:

> The amount of damages is uncontroverted as Nour's testimony at trial was that he paid on the revised note of $1,750,000.00 until the end of 2007 and made no further payments after the lawsuit was filed and made no further payments on the $125,000.00 note after the lawsuit was filed. The damages on the revised $1,750,000.00 note is $2,075,276.10. The damages on the $125,000.00 note are $128,074.18.

OSHI is correct that Rule 279 provides in pertinent part that "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279. However, Rule 279 does not stop there. It also provides and case law recognizes that when a party's theory of recovery or defense consists of multiple elements necessary to support that theory and the charge omits an element without objection, the omission does not waive the entire claim. *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 340 (Tex. App.—Austin 2004, no pet.) (citing TEX. R. CIV. P. 279; *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 165 (Tex. 1982)). [4] Additionally, "[t]he rule provides that, at a party's request, the trial judge may make written findings on the omitted element." *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002). "When an element of a claim is omitted from the jury charge without objection and no written findings are made by the trial court on that element then the omitted element is deemed to have been found by the court in such a manner as to support the judgment." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228-29 (Tex. 2011) (citing TEX. R. CIV. P. 279).

The elements of a breach-of-contract claim include "(1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach."

---

[4] Rule 279 provides in its entirety as follows.

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant. TEX. R. CIV. P. 279.

*Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.). It does not appear from the record that OSHI disputed that the first two elements of a breach-of-contract claim were proven. Left to be resolved by the finder of fact were the elements of breach and damage. The jury was asked whether OSHI "breached its contracts" with Appellants, and it so found. No objections were made by any party to the omission of a jury question on the element of damages.

In their motion for judgment, Appellants requested the trial court make a finding on the omitted element of damages pursuant to Rule 279, arguing "[t]he amount of damage is uncontroverted" and "there is factually sufficient evidence to support the missing element." When the trial court failed to make findings on the omitted element of damages, Rule 279 operated to deem findings in support of the judgment, which in this case means a finding of no damages is deemed to support the take-nothing judgment. However, "just as with any other finding, there must be evidence to support a deemed finding." *Guerra*, 348 S.W.3d at 229 (citing TEX. R. CIV. P. 279).

Following rendition of the judgment, Appellants argued in their motion for new trial, "the damages were established by the evidence as a matter of law" and "[t]he [trial court's] finding of a take-nothing judgment is against the great weight and preponderance of the evidence at trial." We conclude Appellants have not waived their claim for damages by failing to submit a jury question on the element of damages nor have they waived arguments as to the legal and factual sufficiency of the trial court's deemed finding. *See PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 713 (Tex. App.—Dallas 2011, pet. denied) (concluding appellant adequately preserved its argument that the trial court's deemed finding was supported by insufficient evidence when appellant asserted the argument in its "postverdict 'motion to disregard (and for

judgment notwithstanding) certain jury findings'") (citing TEX. R. CIV. P. 33.1(a) (general rule for error preservation)).

On appeal, Appellants argue there is "legally and factually sufficient evidence to support a deemed finding of damages" and "[t]here is no evidence or factually insufficient evidence to support the take-nothing judgment." We construe Appellants' issue to challenge the legal and factual sufficiency of the trial court's deemed finding of no damages. *See* TEX. R. APP. P. 38.1(f), 38.9; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants.").

### III. SUFFICIENCY OF EVIDENCE OF DEEMED FINDING

### A. Standard of Review & Applicable Law

When both legal sufficiency and factual sufficiency challenges are raised, the appellate court should consider the legal sufficiency issue first. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981) (per curiam).

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). "A party attempting to overcome an adverse finding as a matter of law must surmount two hurdles." *U.S. Bank, Nat'l Ass'n v. Am. Realty Trust, Inc.*, 275 S.W.3d 647, 652 (Tex. App.—Dallas 2009, pet. denied) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). "First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* (citing *Sterner,* 767 S.W.2d at 690). "Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law." *Id.* (citing *Sterner,* 767

S.W.2d at 690). "Only if the contrary position is conclusively established will the point of error be sustained." *Id.* "A matter is conclusively established 'only if reasonable people could not differ in their conclusions . . . .'" *Id.* (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005)).

"In reviewing the factual sufficiency of the evidence, we consider all of the evidence in the record." *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)). "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 652-53. "In reviewing a factual sufficiency issue, we must first examine the record to determine if there is some evidence to support the finding; if so, then we must determine whether the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust." *Id.* at 652. "We may reverse only when we conclude the non-finding is against the great weight and preponderance of the evidence." *Id.* "We are also mindful the trial court is the sole arbitrator of the credibility of the witnesses and the weight to be accorded their testimony." *Id.*

### B. Application of Law to Facts

Appellants argue the trial court erred by denying their motion for judgment and by denying their motion for new trial. They assert the award of damages for their breach-of-contract counterclaim "can be established mathematically by the terms of the note itself and the testimony of Nour without reference to any other evidence." According to Appellants, "[t]he principal amount of the note ($1,750,000.00), the interest rate (5%), the number of monthly payments (60), the monthly payment ($7291.66) and the maturity date (October 2012) are all conclusively

established by the First Modification Agreement."[5] They contend "[t]he only remaining factor was to determine the date of default, which was established by the testimony of OSHI's own representative, Ramez Nour, as January, 2008." Finally, Appellants argue the damages "can be mathematically established at $2,048,958.00, representing the $1,750,000.00 principal due on October 24, 2012 plus the interest payments of $87,500.00 for three years of 2008-9 plus five months of interest payments of $7291.66 for $36,458.00 for 2011 through the month of trial" in May 2011.[6]

Appellee responds "at trial, Appellants failed to present sufficient evidence of the amounts due under any contract to adequately allow the jury to determine what damages were owed." According to Appellee, "neither the specific amounts paid on the contract nor the amount remaining under the contract was ever introduced to the jury." Appellee argues "[t]he only evidence offered by Appellants was the testimony of Plaintiff, Ramez Nour . . . [whose] testimony only supported the fact that a contract existed and that, at some point in time, [OSHI] made no further payments under a contract." Appellee contends "neither the specific amounts paid on the contract nor the amount remaining under the contract was ever introduced to the jury" and "the contracts . . . (that were allegedly breached) were never introduced to the Jury." "As such, no evidence was presented to allow the jury, as factfinder, to determine the amount of possible damages."

First, we consider Appellants' legal sufficiency challenge by examining the record for evidence that supports the trial court's deemed finding, while ignoring all evidence to the

---

[5] We note the FMA does not specifically state the number of payments to be sixty (60) or the monthly payment amount to be 7291.66. However, the number of months between the signing date of September 25, 2007, and the maturity date of October 24, 2012, is sixty. Additionally, the monthly payment amount can be calculated as five percent of the principal divided by twelve months.

[6] The motion for new trial was filed in May 2011, which accounts for the five months of interest in 2011. We construe the "three years of 2008-9" of interest to be for interest payments due under the FMA, but not paid in 2008, 2009, and 2010.

contrary. *See U.S. Bank*, 275 S.W.3d at 652. The record shows Appellee presented no evidence to dispute Nour's testimony where he stated he executed the FMA and had not made any payments under the agreement since December 2007. We have been cited no evidence and our review reveals no evidence in the record to support a finding Appellants sustained no damages from Appellee's breach.

However, Appellant had the burden of proof as to the damages issue. Appellants cannot succeed on a legal sufficiency challenge unless Appellants' damages were established as a matter of law. *See U.S. Bank*, 275 S.W.3d at 652; *see also Kitchen v. Frusher*, 181 S.W.3d 467, 475 (Tex. App.—Fort Worth 2005, no pet.) ("because the evidence failed to establish a particular value for [appellant's] compensable work as a matter of law, her legal sufficiency challenge must fail").

In addition to the testimony of Ramez Nour, former owner of OSHI, and the terms of the FMA in the record that Appellants cite in support of their argument, the record also contains the testimony about damages from Adam Alfia, president of Revised EASI, Inc. and Revised OII, Inc. He testified Nour had not made any payments since the FMA was signed in September 2007, which contradicted Nour's testimony he made payments under the FMA through December 2007. Also, when Alfia was asked "how much [he] lost as a result of the refinancing transaction in real dollars," he testified "the 1.75 million has never been paid back," that he "gave up $700,000 as consideration for getting $550,000 early" in the FMA, and concluded his damages were "roughly about $2.5 million." On this record, we conclude there is no evidence to support the trial court's deemed finding of no damages, but because there is inconsistency in the damages evidence as described above, we cannot conclude the evidence established $2,048,958 in damages as a matter of law. *See U.S. Bank*, 275 S.W.3d at 652; *Kitchen*, 181 S.W.3d at 475. Therefore, we decide against Appellants as to their legal-sufficiency challenge.

–10–

We now consider Appellants' factual-sufficiency challenge. Although the record demonstrates there is no conclusive evidence of a specific amount of damages, there is evidence Appellants sustained damages from Appellee's breach of "its contracts with [Appellants]." The evidence described above showed that Appellee failed to make interest-only payments from at least January 2008 until the trial in May 2011 and failed to pay the principal amount. The trial court's deemed finding of no damages is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See U.S. Bank*, 275 S.W.3d at 653; *Kitchen*, 181 S.W.3d at 475 (holding evidence that showed a range of values for appellant's compensable work, although not a specific value, was factually insufficient to support a jury's zero value finding). Accordingly, we conclude that the evidence is factually insufficient to support the trial court's deemed finding of no damages. Therefore, Appellants' sole issue is decided in their favor.

## IV. CONCLUSION

In their case at trial, Appellee contested liability as to Appellants' breach-of-contract counterclaim, and Appellants' claimed damages were unliquidated. Because we conclude the evidence is factually insufficient, we must remand this case for new trial as to both liability and damages regarding Appellants' breach-of-contract counterclaim against OSHI. *See Glover*, 619 S.W.2d at 402; *see also* TEX. R. APP. P. 44.1(b) (prohibiting separate trial solely on unliquidated damages when liability is contested); *Rancho La Valenicia, Inc. v. Aquaplex, Inc.*, 383 S.W.3d 150, 152 (Tex. 2012).

Appellants assert the parties stipulated before the case was submitted to the jury that attorney's fees of $125,000 was reasonable and necessary. However, since this case is being remanded for new trial as to Appellants' breach-of-contract counterclaim against OSHI, the issue of attorney's fees is likewise remanded. We affirm the trial court's judgment in all other respects.

–11–

*See* TEX. R. APP. P. 44.1(b) (authorizing remand of only part of a case if error only affects that part).


                                       /Douglas S. Lang/
                                       DOUGLAS S. LANG
                                       JUSTICE


111390F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ADAM & BARRY ALFIA, OSHI, INC.,
REVISED EASI, INC., & REVISED OII,
INC., Appellants

No. 05-11-01390-CV          V.

OVERSEAS SERVICE HAUS, INC.,
Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 07-14742.
Opinion delivered by Justice Lang. Justices
Myers and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED IN PART** and **REVERSED IN PART**.

We **REVERSE** that portion of the trial court's judgment on the breach-of-contract counterclaim against appellee OVERSEAS SERVICE HAUS, INC., and we **REMAND** for further proceedings as to that claim. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellants ADAM & BARRY ALFIA, OSHI, INC., REVISED EASI, INC., & REVISED OII, INC. recover their costs of this appeal from appellee OVERSEAS SERVICE HAUS, INC.

Judgment entered this 9th day of July, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE