**Reverse and Remand and Opinion Filed July 20, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01342-CV

### BAYLOR UNIVERSITY MEDICAL CENTER, Appellant
### V.
### MARY GREESON, Appellee

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-07506**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

Baylor University Medical Center appeals an order abating a case and refusing to decide Baylor's motion to compel arbitration regarding Mary Greeson's work place injury claim until the parties complete discovery outlined in their Rule 11 agreement. In two issues Baylor argues that (i) the trial court should have compelled Greeson to pursue her claims through arbitration and (ii) the trial court erroneously continued to abate the case pending certain merits based discovery. Baylor also asks us to award it its appellate attorneys' fees pursuant to civil practice and remedies code § 38.001 as the prevailing party on its claim that Greeson breached the agreement to arbitrate.

Greeson responds that (i) the abatement order is not appealable, (ii) Baylor did not preserve error in the trial court or adequately state its appellate issues, and (iii) the evidence supports the trial court's ruling.

As discussed below, we have jurisdiction over this appeal, agree with Baylor's second issue, reject Greeson's arguments, reverse the trial court's order, and remand this case for further proceedings consistent with this opinion.

## I. Background

Baylor is a Texas Worker's Compensation System nonsubscriber. Greeson participated in Baylor's Occupational Injury Benefit Plan as a Baylor employee. That plan's Summary Plan Description (SPD) describes the plan's terms and conditions and includes a mandatory arbitration clause.[1] The arbitration clause states, "All claims or disputes described below [concerning workplace injuries among other claims] that cannot otherwise be resolved between Baylor and you are subject to final and binding arbitration." That clause also says, "The arbitrator shall administer all steps in the arbitration process, from discovery though the final decision . . . ."

Greeson sued Baylor, claiming a plan covered workplace injury. Baylor answered with a general denial and affirmative defenses, including the plan's mandatory arbitration provision.

The parties subsequently signed a Rule 11 agreement in which they agreed to abate the suit while they conducted limited discovery and a mediation. When the parties did not complete their initial agreed discovery plan, they signed an "AMENDED RULE 11 AGREEMENT," which (1) continued the agreed abatement, (2) added that "[t]he case will remain abated until a Motion to Re-Open is filed by one of the parties," and (3) then further defined the contemplated discovery and set new agreed deadlines.

---

[1] The SPD appears to serve as the plan's governing plan document.

The record indicates that the contemplated discovery was merits discovery, not discovery concerning whether the parties reached a valid arbitration agreement in the first place or whether Greeson's claims are within that agreement's scope. The trial court abated the case pursuant to the Rule 11 agreement.

Baylor subsequently filed a motion to dismiss or, alternatively, to compel arbitration, claiming that Greeson was not cooperating with discovery and that the court should enforce the SPD's arbitration clause. Baylor shortly thereafter moved to reopen the case to present its motion to dismiss or to compel arbitration. Greeson opposed Baylor's motion.

An associate judge heard the matter, ruled for Baylor, and ordered (i) the case dismissed without prejudice and (ii) Greeson to initiate an arbitration pursuant to the SPD.

Greeson appealed to the trial court. The record from the trial court's hearing on that appeal indicates that the trial court was concerned about whether an arbitrator would allow Greeson the discovery she claimed Baylor allegedly had not provided. The trial court also questioned what difference it makes whether the trial court or an arbitrator handles the discovery issues, to which Baylor responded that it matters because the parties contracted for the arbitrator to resolve all disputes involved in that case. The trial court thereafter vacated the associate judge's order and ordered that "the action will remain on the court's docket and the action will remain abated, until the specific limited discovery set out in the parties' Rule 11 Agreement is completed."

Baylor appealed, arguing that the Rule 11 agreement allows it to terminate the abatement at any time by filing a motion to reopen the case or that Greeson materially breached the agreement by not cooperating with discovery.

Greeson responds that (i) the subject order is not an appealable order denying a right to arbitrate, (ii) Baylor failed to preserve error by not formally objecting to the trial court's order

and not adequately stating its appellate issues, and (iii) the trial court correctly read the agreement to remain effective because the evidence supports an implied finding that Greeson did not materially breach the Rule 11 agreement.

## II. Analysis

### A. Greeson's First Argument: Is the Trial Court's Order Appealable?

Greeson argues that we lack jurisdiction over this appeal "because no statute confers jurisdiction and the Trial Court entered no order 'hostile to arbitration', contrary to Appellant's claims." Baylor replies that its appeal is proper because the appeal would be proper under the Federal Arbitration Act (FAA). We agree with Baylor.

Texas Civil Practice and Remedies Code § 51.016 provides that a party, in a matter covered by the FAA, may take an interlocutory appeal from an arbitration order if 9 U.S.C. § 16 would permit an appeal from a federal district court's similar order.[2] TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015). In cases governed by the FAA, that statute permits appeals from (i) an order denying a motion to compel arbitration or (ii) an interlocutory order granting, continuing, or modifying an injunction against an arbitration. *See* 9 U.S.C. §§ 16(a)(1)(B), (2).

Applying those statutes here results in our jurisdiction over this appeal because: One, the SPD states that, "The Federal Arbitration Act will govern the interpretation, enforcement, and proceedings under this arbitration requirement," and the parties do not dispute the FAA's application to this case. Section 51.016's first prong is thus met.

Two, the trial court's order (i) by retaining trial court control over merits discovery affirmatively denies Baylor's motion to compel arbitration over at least a portion of the

---

[2] Section 51.016 states:

In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court of law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

proceeding which the parties agreed the arbitrator has authority, the administration of all discovery, and (ii) indefinitely continues the trial court's prior order abating the case before Baylor's motion to compel is heard. As such, the trial court's order presents an order that would be appealable under the FAA and is thus appealable here. *See Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 998–99 (8th Cir. 2004).

We are aware of sister court decisions holding that appellate courts lack jurisdiction over appeals from orders deferring a ruling on a motion to compel arbitration pending discovery regarding whether a valid arbitration agreement exists or whether the arbitration agreement's scope covers the dispute. *See, e.g.*, *VNA, Inc. v Figueroa*, 403 S.W.3d 480, 481–83 (Tex. App.—El Paso 2013, no pet.) (order deferring ruling on motion to compel arbitration pending discovery regarding validity of arbitration agreement not appealable); *ReadyOne Indus., Inc. v. Simental*, 394 S.W.3d 676, 677–80 (Tex. App.—El Paso 2012, no pet.) (same). But, because trial courts lack the authority to order pre-arbitration merits discovery (which issues are in the arbitrator's province), *see In re Houston Pipe Line Co.*, 311 S.W.3d 449, 451 (Tex. 2009) (orig. proceeding) (pre-arbitration authority to order discovery regarding arbitrability issues does not authorize court-ordered merits discovery); *In re Susan Newell Custom Home Builders, Inc.*, 420 S.W.3d 459, 460 (Tex. App.—Dallas 2014, orig. proceeding), the trial court's usurpation of that authority in this case means that the trial court denied Baylor's right to have the arbitrator decide those issues.

**B.     Greeson's Second Argument:  Did Baylor Preserve Its Complaints?**

Greeson contends that Baylor failed to preserve error by (i) not objecting to the trial court's order vacating the associate judge's order and (ii) not stating appellate issues that challenge any trial court ruling. We disagree.

### 1. Did Baylor Preserve Error at the Trial Court Level?

Greeson says that Baylor failed to preserve error in the trial court by not formally objecting to the trial court's decision to vacate the associate judge's order granting Baylor's motion to dismiss or, alternatively, to compel arbitration. We disagree because Baylor fully presented its positons to the trial court, the trial court ruled against Baylor (at least as to the abatement), and the rules do not require a formal exception to the trial court's ruling.

Greeson relies on Texas Rule of Appellate Procedure 33.1(a)(1)(A)–(B), *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999) (per curiam), and *McKinney v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania,* 772 S.W.2d 72, 74 (Tex. 1989), to argue that Baylor did not preserve error in the trial court. These authorities, however, do not help Greeson.

First, Rule 33.1(a) provides:

(a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

> (1) the complaint was made to the trial court by a timely request, objection, or motion that:

>> (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

>> (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

> (2) the trial court:

>> (A) ruled on the request, objection, or motion, either expressly or implicitly; or

>> (B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Tex. R. App. P. 33.1(a).

–6–

Rule 33.1 does not support Greeson for four reasons:

One, Baylor timely presented its requests in its motion to dismiss or, alternatively, to compel arbitration. That document explained what relief Baylor wanted and why Baylor believed that relief was warranted.

Two, Baylor's motion was before the trial court when it ruled on Greeson's appeal, which asked the trial court to vacate the associate judge's order.

Three, Baylor also addressed Greeson's appeal with a separate 13 page response in which Baylor explained its opposition to Greeson's arguments.

Four, the trial court conducted an oral argument regarding Greeson's appeal during which the parties expressed their respective views, and the hearing transcript covers 19 pages of discussion on the very issues Baylor now argues on appeal.

We thus conclude that the record satisfies Rule 33.1 by showing that Baylor adequately told the trial court what relief Baylor wanted and why it was entitled to that relief. We also conclude that the trial court's order sustaining Greeson's appeal and reinstating the prior abatement satisfies Rule 33.1(a)(2)'s ruling requirement.

Next, Greeson's reliance on *McKenzie* is misplaced because the issue there was whether the defendant waived any objection to compensatory and punitive damage awards in a state wrongful termination case because it did not object to submitting those damages issues to the jury and first raised whether the statute permitted their recovery in a response to the plaintiff's motion for judgment on the verdict. The supreme court held that (1) the defendant was not required to object to the charge because whether those damages were permissible was a legal question for the court, not the jury, and (2) the defendant's response to the motion for judgment was sufficient since the plaintiff could have at that time moved to amend its petition to assert an analog federal claim that would have permitted the recovery of those damages. 997 S.W.2d at

–7–

279–80. Here, Baylor presented its arguments to the trial court several times before the trial court ruled on those arguments.

Finally, the supreme court held in *McKinney* that a party's objection to testimony from an undisclosed witness was sufficiently specific to tell the trial court the reasons for the objection. 772 S.W.2d at 74. Here, however, Greeson does not explain why Baylor's various motions, briefs, and oral arguments did not sufficiently inform the trial court of Baylor's arguments and their supporting grounds.

We thus conclude that Baylor sufficiently preserved its arguments in the trial court.

### 2. Did Baylor Sufficiently Identify the Trial Court Ruling About Which It Complains?

Greeson argues that Baylor's brief does not satisfy the requirement that an appellant's "brief must state concisely all issues or points presented for review" because neither of Baylor's Rule 38.1(f) stated issues expressly mentions the trial court's October 3, 2014 order. There is, however, only one order at issue in this appeal—the trial court's October 3, 2014 "ORDER GRANTING PLAINTIFF'S APPEAL OF ORDER TO DISMISS CASE." Moreover, Baylor's "STATEMENT OF THE CASE," after summarizing the case's procedural posture and discussing the trial court's October 3, 2014 order, states that "Baylor timely appealed from that order" and cites that order's pages in the clerk's record. We conclude that, under these circumstances, Baylor's "ISSUES PRESENTED" sufficiently identified the trial court ruling Baylor asks us to address.

### C. Baylor's Second Issue: Did the Trial Court Erroneously Continue the Abatement?

Baylor contends that the trial court's order is erroneous either because (i) the Rule 11 agreement expired by its unambiguous terms when Baylor filed its motion to reopen the case or (ii) Greeson materially breached the agreement by not fulfilling her discovery obligations under that agreement. Greeson disagrees with both arguments. For the reasons discussed below, we

agree with Baylor's first argument and reverse the trial court's order on that ground without addressing Baylor's second argument.

Whether the Rule 11 agreement expired with Baylor's motion to reopen is a question of contract construction that we review de novo. *U.S. Bank, Nat'l Ass'n v. Am. Realty Trust, Inc.*, 275 S.W.3d 647, 650 (Tex. App.—Dallas 2009, pet. denied). If the relevant contract construction rules give the contract a definite legal meaning, we construe it as a matter of law. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

In construing a written contract, we must ascertain and effect the parties' intentions as expressed in the document. *Id*. at 311–12; *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). We consider the entire writing and attempt to harmonize and give effect to all its terms by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank,* 165 S.W.3d at 312. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Webster,* 128 S.W.3d at 229. And, generally, words appearing earlier in a contract have precedence over later appearing words. *Dorsett v. Cross*, 106 S.W.3d 213, 220 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Additionally, courts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank,* 165 S.W.3d at 311; *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex. 1987).

If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous. *Frost Nat'l Bank,* 165 S.W.3d at 312. But a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Reilly,* 727 S.W.2d at 530. Lack of clarity or disagreement over interpretation of contract language,

however, does not render the language ambiguous. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Whether a contract is ambiguous is a question for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was entered into. *Reilly*, 727 S.W.2d at 529.

Here, the parties were attempting to avoid a protracted proceeding and the related expense if they could resolve the matter through limited discovery and mediation before a full-fledged proceeding became necessary. But, unlike in the original Rule 11 agreement, they also provided in the amended Rule 11 agreement that either party could terminate the abatement by filing a motion to reopen the case.

Specifically, the agreement's first numbered paragraph states:

The above-referenced lawsuit has been abated pending a *possible* resolution of the arbitration issue and while the parties *seek to resolve* the dispute through mediation. The case will remain abated until a Motion to Re-Open is filed by one of the parties. (Emphasis added.)

The second numbered paragraph states, "Deadlines in the lawsuit have been abated, including the expert report deadline under Tex. Civ. Prac. & Rem. Code 74.351, which is specifically extended to 30 days after the abatement of the case ends."

The third numbered paragraph states, "Limited discovery will be *accomplished* during the abatement, including: . . . ." (Emphasis added.)

The fourth numbered paragraph provides, "The parties *will mediate* this case with Mark Gilbert no later than July 25, 2014." (Emphasis added.)

Baylor contends that the Rule 11 agreement gives it the option to terminate the abatement at any time. Greeson responds that the third and fourth numbered paragraphs limit Baylor's ability to exercise that option until the contemplated discovery and mediation have been completed. At first glance there is an apparent conflict between the tentative words "possible resolution" and "seek to resolve" in the first numbered paragraph and the later more concrete

–10–

words "will be accomplished" and "will mediate" in the third and fourth numbered paragraphs. But we conclude otherwise after applying the above rules of construction to the Rule 11 agreement.

Construing the Rule 11 agreement as a whole; considering the circumstances that existed when the parties entered into it from a utilitarian standpoint; bearing in mind the particular business activity sought to be served; avoiding a construction that is unreasonable, inequitable, and oppressive; and considering the order in which the words appear we conclude that the amended Rule 11 agreement unambiguously entitled Baylor to end the abatement by filing a motion to reopen.

First, the Rule 11 agreement makes plain the parties' goal  to minimize costs if they could resolve their dispute without incurring the additional costs of litigating arbitrability issues, filing an arbitration case, and appointing an arbitrator.

Next, the first numbered paragraph references a "possible" resolution of the arbitrability issue and that the parties "seek" to resolve their disputes through mediation.  These terms recognize the possibility that the parties may not be able to resolve their disputes without reaching the arbitrability issue or through mediation.

Finally, the following sentence, stating that "[t]he case will remain abated until a Motion to Re-Open is filed by one of the parties," indicates the parties' agreement that the abatement period will end anytime either party files a motion to reopen the proceeding.  That this sentence immediately follows the sentence which recognizes the possibility that the intended goals could become frustrated shows the parties' intent to provide an exit right should that frustration arise. In this regard, it is significant that parties added this exit right in the amended Rule 11 agreement after they had already attempted unsuccessfully to conduct the contemplated discovery and mediation.

We thus agree with Baylor's second issue and conclude that the trial court reversibly erred by continuing the abatement following Baylor's motion to reopen.

**D.      Baylor's First Issue:  Did Greeson Agree to Arbitrate Her Claims Against Baylor?**

Baylor's first issue asks us to order Greeson to pursue her claims through arbitration. The record reflects that the trial court has not ruled on Baylor's motion to compel in the first instance.  We thus defer to the trial court for the opportunity to do so on remand.  *Cf. Taylor v. Fossett*, 320 S.W.3d 570, 578 (Tex. App.—Dallas 2010, no pet.) (remanding to trial court to determine award of attorneys' fees in the first instance).

**E.      Is Baylor Entitled to Recover Its Attorneys' Fees for this Appeal?**

Baylor asks us to award it its attorneys' fees in pursuing this appeal.  Greeson opposes that request.  The trial court, however, has not had an opportunity to address Baylor's claim in the first instance.  We thus direct the trial court to address that issue on remand.  *Cf. id.*

### III.  Conclusion

For the above reasons, we reverse the trial court's October 3, 2014 order and remand this case to that court for further proceedings consistent with this opinion.

141342F.P05

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BAYLOR UNIVERSITY MEDICAL
CENTER, Appellant

No. 05-14-01342-CV        V.

MARY GREESON, Appellee

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-07506.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the trial court's October 3, 2014 order continuing to abate the case is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellant BAYLOR UNIVERSITY MEDICAL CENTER recover its costs of this appeal from appellee MARY GREESON.

Judgment entered July 20, 2015.