## In re KAPLAN HIGHER EDUCATION CORPORATION and Leticia Ventura, Relators.

### No. 06–0072.

Supreme Court of Texas.

Aug. 24, 2007.

Joy M. Soloway, Richard N. Carrell, Fulbright & Jaworski L.L.P., Houston, David G. Oliveira, Roerig Oliveira & Fisher, Brownsville, for Relators.

Joe Escobedo Jr., Mauro Fernando Ruiz, David H. Hockema, Hockema, Tippit & Escobedo, L.L.P., McAllen, Jeffrey D. Small, Law Office of Jeff Small, David R. Montpas, Brendan K. McBride, Prichard Hawkins McFarland & Young, L.L.P., San Antonio, Damian Orozco, Pharr, for Real Parties in Interest.

PER CURIAM.

A vocational college and 45 of its students agreed to arbitrate any dispute "arising from or relating to" their enrollment agreement. Claiming they were fraudulently induced to sign up, the students nevertheless seek to avoid arbitration by pursuing their claims only against two nonsignatories. The parties agree the Federal Arbitration Act applies. *See* 9 U.S.C. § 1 *et seq.* The trial court refused to compel arbitration, and the Thirteenth Court of Appeals denied mandamus relief. We conditionally grant it. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) ("Mandamus relief is proper to enforce arbitration agreements governed by the FAA.").

The students enrolled in an electrician's program at the San Antonio College of Medical and Dental Assistants—McAllen Branch ("the College"), a wholly-owned subsidiary of Kaplan Higher Education Corporation. They allege they were fraudulently induced to enroll by assurances that upon graduation they would be eligible for licenses as journeymen or master electricians. Each student signed an enrollment agreement detailing tuition, rules, and graduation requirements, and requiring them to arbitrate "[a]ny controversy or claim arising out of, or relating to, this Agreement." [1]

Initially, the plaintiffs filed suit against Kaplan, the College, Frank Jennings (the College's president) and Leticia Ventura (the College's admissions director). When the defendants moved for arbitration, the plaintiffs dropped their claims against the College and Jennings (both signatories to the agreements) as well as all claims of joint venture or enterprise, leaving only claims against Kaplan and Ventura (both nonsignatories).

▪ Although alleged in various forms,[2] the substance of the students' claim was fraudulent inducement, as they seek refunds of tuition and other costs they would not have incurred had they not been in-

1. Each enrollment agreement contained the following arbitration provision: ACKNOWLEDGEMENT OF OBLIGATION: ... Any controversy or claim arising out of, or relating to, this Agreement, or breach thereof, no matter how pleaded or styled, shall be settled by arbitration in accordance with the Commercial Rules of Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction.

2. The students' pleadings alleged negligence, negligence per se based on alleged violations of the Texas Education and Texas Administrative Codes, violations of the Texas Deceptive Trade Practices Act, and negligent misrepresentation.

duced to sign up. *See Weekley*, 180 S.W.3d at 131–32 (stating that arbitrability "turns on the substance of the claim, not artful pleading"); *Haase v. Glazner*, 62 S.W.3d 795, 797–800 (Tex.2001) (distinguishing fraudulent inducement from other fraud claims as it "presupposes that a party has been induced to enter a contract"). We have held that such claims fall within an agreement to arbitrate all disputes "involving" an underlying contract. *See In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 550–51 (Tex.2002). Clearly, the students' complaints arise out of and relate to their enrollment agreements.

■ We disagree with Kaplan that the students are suing on those agreements. "Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract.... [C]laims can be brought in tort (and in court) if liability arises from general obligations imposed by law." *Weekley*, 180 S.W.3d at 132. Claims of fraudulent inducement arise from general obligations imposed by law, not the underlying contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex.2006) ("The duty not to fraudulently procure a contract arises from the general obligations of law rather than the contract itself, and may be asserted in tort even if the only damages are economic."); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex.1998) ("[I]t is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself.").

■ Nevertheless, the agents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract. Thus, if two companies sign a contract to arbitrate disputes, one cannot avoid it by recasting a contract dispute as a tortious interference claim against an owner, officer, agent, or affiliate of the other. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762–63 (Tex.2006) (per curiam). "Every contract claim against a corporation could be recast as a tortious interference claim against its agents," and it is impractical to require every corporate agent to sign or be listed in every contract. *Id.* at 762. As a contracting party generally cannot avoid unfavorable clauses by suing the other party's agents, this rule is necessary " 'to place arbitration agreements on equal footing with other contracts'." *Id.* (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)).

■■ For the same reasons, the same rule must apply when a party to an arbitration contract seeks to avoid it by pleading a contract dispute as fraudulent inducement by an officer, agent, or affiliate of the other. Here too, almost every contract claim against a corporation could be recast as a fraudulent inducement claim against the agents or employees who took part in the negotiations preceding it. If such arbitration clauses are enforceable only if every officer, employee, agent, or affiliate signs or is listed in the contract, they would be more easily avoided than other contract clauses.

Further, the students' agreements with the College require arbitration here because the College will be liable for the judgment if their suit is successful. The Texas Education Code requires vocational schools to provide full refunds if enrollment was procured by representations "by the owner or representatives of the school." Tex. Educ.Code § 132.061(a)(2); *see also Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002) (stating that employers are generally liable for employees' torts committed in course, scope, and furtherance of employer's busi-

ness). The enrollment agreements specifically provided for tuition refunds in the event enrollment was induced by misrepresentation. If the College's liability for such refunds (about $10,000 for each student) can be decided in court by suing its agents, then the arbitration contract has been effectively abrogated.

The students argue that Ventura and the other admissions officers to whom they spoke were not employees of the College but of Kaplan. But the undisputed facts (and the students' own pleadings) show that regardless of who paid them, they were acting as agents of the College when they advertised, recruited, and procured contracts on its behalf, and that the College itself will have to answer for any misrepresentations they made in doing so.

The students also assert that Kaplan cannot seek arbitration because of "unclean hands" in its dealings with them. But this defense pertains to the enrollment agreement in general rather than the arbitration clause in particular, and thus must be arbitrated. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) ("We reaffirm today that ... a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex.2001).

We emphasize again today that arbitration clauses do not automatically cover all corporate agents or affiliates. *See In re Merrill Lynch Trust Co.,* 235 S.W.3d 185, 191 (Tex.2007); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex. 2006) (per curiam). Like other contracts, arbitration agreements "are enforced according to their terms and according to the intentions of the parties." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)

(internal citation omitted). Thus, for example, owners may not be able to invoke a subsidiary's arbitration clause when they act on their own behalf rather than for their subsidiary. *See, e.g., Westmoreland v. Sadoux,* 299 F.3d 462, 466 (5th Cir. 2002). But when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings.

Accordingly, without hearing oral argument, *see* TEX.R.APP. P. 52.8(c), we conditionally grant the writ of mandamus and direct the trial court to order that the students' claims proceed to arbitration. Our writ will not issue unless the trial court fails to do so.