**Writ of Mandamus is Conditionally Granted; Opinion Filed January 14, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01474-CV

## IN RE SUSAN NEWELL CUSTOM HOME BUILDERS, INC., SUSAN NEWELL, INDIVIDUALLY, AND LISA DOOLITTLE, Relators

**Original Proceeding from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-03325-F**

## OPINION

Before Justices Moseley, Lang-Miers, and Evans
Opinion by Justice Moseley

Relators filed this mandamus proceeding after the trial court signed an order granting the request of real party in interest Lynne McGreal Tonti to take depositions of relators "limited in scope to inquiries regarding fraudulent or criminal conduct of Susan Newell and/or Lisa Doolittle." In order to obtain mandamus relief, relators must show both that the trial court has abused its discretion and that they have no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). Relators have met this burden. We conclude the trial court abused its discretion in ordering these depositions and relators have no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus.

Tonti contracted for Susan Newell Custom Home Builders, Inc. (the Company) to build a house for her. The contract contains an arbitration clause. Tonti sued the Company, as well as its principal Susan Newell and its bookkeeper Lisa Doolittle, in tort, alleging they intentionally sent her false invoices. The individual relators are not parties to the contract; however, they sought to compel arbitration under the contract.

The trial court ruled that Tonti must arbitrate her claims with the Company.[1] The court has not yet ruled whether the individual relators are entitled to arbitrate also. To decide this question, the court ordered that six-hour depositions (three hours each side) may be taken of the Company, Newell, and Doolittle, "limited in scope to inquiries regarding fraudulent or criminal conduct of Susan Newell and/or Lisa Doolittle."

A trial court may order pre-arbitration discovery when it cannot fairly and properly make its decision on the motion to compel because it lacks sufficient information regarding the scope of the arbitration provision or other issues of arbitrability. *In re Houston Pipe Line Co.*, 311 S.W.3d 449, 451 (Tex. 2009). But the discovery may not extend to the merits of the underlying controversy. *Id.*

The individual relators are not parties to the contract, and therefore are not parties to the arbitration clause. Tonti asserts that the nonsignatory individuals may only compel arbitration through equity, specifically, through equitable estoppel. She cites *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000), in support of that proposition. She argues further that because individual relators are relying on equity, she may raise unclean hands as a defense to enforcement of the arbitration clause. *See In re EGL Eagle Global Logistics, L.P.*, 89 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2002) (orig. proceeding) ("As an equitable theory, estoppel is subject to traditional equitable defenses.").

---

[1] This ruling has been challenged in a separate original proceeding, *In re Lynne Tonti*, No. 05-13-01560-CV, pending before this Court.

Individual relators respond that they rely on agency law to enforce the arbitration clause, so equitable defenses do not apply, citing *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007).[2] In *Kaplan*, the court held that two nonsignatories to a contract containing an arbitration clause could invoke the arbitration agreement as agents of the signatories. *Id.* The court explained that "the agents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract." *Id.* It held the plaintiffs' claims that the nonsignatories acted with "unclean hands" must be arbitrated, because the defense "pertain[ed] to the [contract] in general rather than the arbitration clause in particular." *Id.* at 210. The court noted that arbitration clauses do not automatically cover all corporate agents. *Id.* "But when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings." *Id.*; *see also In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 190 (Tex. 2007) (because plaintiff's claims against employee were "in substance" claims against the employer, plaintiff must arbitrate pursuant to agreement with employer).

We conclude that the reasoning in *Kaplan* applies here. The arbitration clause in Tonti's contract with the Company states in relevant part:

> Except for Owner's [Tonti's] exercise of any equitable remedies, if a controversy or dispute arises out of or related to the Contractor's performance under this Construction Agreement . . . the parties hereto hereby agree to settle the dispute as provided under the Federal Arbitration Act, by binding arbitration . . . .

Tonti argues that this clause does not require arbitration of any of her claims against either the Company or individual relators. She contends that she agreed to arbitrate only contract claims,

---

[2] *See also In re Merrill Lynch, Peirce, Fenner & Smith, Inc.*, 195 S.W.3d 807, 814 (Tex. App.—Dallas 2006, orig. proceeding) ("non-signatories may be bound to arbitration agreements under six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary.") (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding)).

and her claims against the Company are for statutory violations or torts. She also contends that her agreement was to arbitrate only those claims arising out of the Company's "performance" of the agreement. She argues this is narrower than a broad-form agreement to arbitrate all claims "arising out of or related to" a contract. She also contends that the nonparties to the contract are individually liable for the "independent torts" she has pleaded against them.

An examination of Tonti's amended pleading reveals that although she requests only equitable relief (including "equitable restitution," "equitable constructive trust," "equitable lien," "equitable forfeiture," and similar remedies) and has recast her claims as torts, the substance of her claims is that relators fraudulently overcharged her or billed her for work done on other unrelated projects. She pleads, "When the contract was executed, the Defendants had no intention of limiting Plaintiff's expenses to only the actual costs expended. Instead, the defendants intended to send false invoices to Plaintiff in order to wrongfully take her money." She then pleads specific examples of false or fraudulent invoices sent to her.

The contract contains detailed provisions for "construction cost funding" in Section 7 and Addendum A, including provisions about "costs to be reimbursed" to the contractor and a 15% contractor's fee that Tonti specifically mentions is an integral part of the alleged fraudulent schemes. As relators argue, every cause of action pleaded "is founded in Tonti's unhappiness regarding the costs she was billed for under the Contract for the construction of her home."

The claims against the Company and the individuals are based on the acts of the individual relators in allegedly carrying out these fraudulent billing schemes. A plain reading of the petition shows that relator Susan Newell "is an officer, manager, and/or principal" of the Company. Although Tonti does not specifically plead relator Lisa Doolittle's title or position,[3] the petition is consistent in alleging that Doolittle and Newell acted together in carrying out the

_____

[3] Relators' petition for writ of mandamus indicates that Doolittle was the bookkeeper for the Company.

fraudulent billing schemes. For example, Tonti pleads that Doolittle notarized Newell's fraudulent affidavit claiming sums due from Tonti. In sum, Tonti's claims against the individuals arise from the Company's performance or breach of the contract.

The discovery permitted under the trial court's challenged order is directed to Tonti's argument that individual relators have "unclean hands" and thus may not seek arbitration of her claims. But under *Kaplan*, unless the "unclean hands" allegations pertain to the formation of the arbitration clause in particular rather than the contract in general, the issue is decided by the arbitrator. *Kaplan*, 235 S.W.3d at 210. The wrongful conduct Tonti pleads does not pertain to the arbitration clause in particular, and the discovery sought goes directly to the merits of her claims. Thus, the discovery "extend[s] to the underlying merits of the controversy" and is not necessary to the trial court's decision about arbitrability. *See Houston Pipe Line Co.*, 311 S.W.3d at 451.

In addition, relators have established that the trial court's error in ordering the discovery cannot be cured by ordinary appeal. *See id.* at 452 (mandamus conditionally granted where discovery overbroad); *see also In re VNA, Inc.*, 403 S.W.3d 483, 488 (Tex. App.—El Paso 2013, orig. proceeding) (no adequate remedy by appeal where trial court had no basis to compel discovery prior to deciding arbitrability).

Relators have also requested a stay of proceedings in the trial court "so that all parties may proceed to arbitration without further delay or expense." Our analysis of the trial court's discovery order necessitated consideration of whether Tonti's claims must be arbitrated under the contract. Because we have concluded her claims must be arbitrated, "'a stay is generally the only appropriate order for a state court with jurisdiction of all issues.'" *Senter Invs., L.L.C. v. Veerjee*, 358 S.W.3d 841, 845 (Tex. App.—Dallas 2012, no pet.) (quoting *CMH Homes, Inc. v.*

*Perez*, 340 S.W.3d 444, 450 n.4 (Tex. 2011)). Accordingly, we direct the trial court to order a stay of proceedings so that all parties may proceed to arbitration.

We conditionally grant the relators' petition for writ of mandamus. A writ will issue only in the event the trial court fails to: (1) **VACATE** paragraphs 4 and 5 of her Order of October 17, 2013, which granted the request of real party in interest Lynne McGreal Tonti to take the depositions of Susan Newell, Susan Newell Custom Home Builders, Inc. and Lisa Doolittle; and (2) **ENTER** an order denying Tonti's request to take those depositions, ordering Tonti's claims to be arbitrated, and staying all proceedings in the trial court pending arbitration of Tonti's claims.

/Jim Moseley/
JIM MOSELEY
JUSTICE

131474F.P05