**Opinion filed July 14, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00014-CV

_____

## CRADDICK PARTNERS, LTD., Appellant

## V.

## ENERSCIENCES HOLDINGS, LLC; CHEM ROCK TECHNOLOGIES, LLC; RAPID DRILLING, LLC; AND PERMIAN BASIN VENTURES, LLC, Appellees

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV-50026**

## M E M O R A N D U M   O P I N I O N

Craddick Partners, Ltd. appeals from an order in which the trial court dismissed the lawsuit filed by Craddick Partners against Appellees[1] and ordered the parties to arbitration. The dispute arose from a Sales Representative Agreement

---

[1]Appellees include EnerSciences Holdings, LLC (EnerSciences); Chem Rock Technologies, LLC (Chem Rock); Rapid Drilling, LLC (Rapid Drilling); and Permian Basin Ventures, LLC (PB Ventures).

(Sales Agreement) that was entered into by PB Ventures and Craddick Partners. We affirm.

## I. *Background Facts*

EnerSciences is a holding company that owns two oil and gas suppliers: Chem Rock and Rapid Drilling. Chem Rock sells fracking chemicals, and Rapid Drilling sells drilling fluids—both sell their products to oil and gas producers. In 2012, Tom Craddick approached EnerSciences with an offer to sell Chem Rock and Rapid Drilling products to his clients in the Permian Basin. EnerSciences created PB Ventures, a wholly owned subsidiary of EnerSciences, to "serve as the marketing and sales entity" through which Craddick Partners would sell Chem Rock and Rapid Drilling products to Craddick Partners' customers.

PB Ventures and Craddick Partners signed the Sales Agreement.[2] The Sales Agreement included an arbitration clause that all disputes would be settled in binding arbitration, excluding claims "brought by either party seeking injunctive, declarative or preliminary relief." EnerSciences, Chem Rock, and Rapid Drilling did not sign the Sales Agreement. When disputes arose over the Sales Agreement, Craddick Partners filed suit against PB Ventures as well as EnerSciences, Chem Rock, and Rapid Drilling.

## II. *Procedural History*

Craddick Partners asserted three tort claims against EnerSciences, Chem Rock, and Rapid Drilling:[3] (1) negligent misrepresentation, (2) general negligence, and (3) tortious interference. Craddick Partners sought money damages for the tort

---

[2]Craddick Partners and PB Ventures also signed a Restricted Unit Agreement (Unit Agreement) with a similar arbitration clause, but that agreement is not at issue in this case.

[3]EnerSciences, Chem Rock, and Rapid Drilling will be collectively referred to as the "EnerSciences Parties."

injuries as well as a declaration that the Sales Agreement between Craddick Partners and PB Ventures had terminated. Craddick Partners alleged that:

1. The EnerSciences Parties failed to "come and timely acquire personnel, warehouses, yards, forklifts, trucks and other equipment required by the industry to assist [PB Ventures] with its contract with [Craddick Partners]."

2. The EnerSciences Parties "either obtained [Craddick Partners'] prospects without any payment being made, or have harmed [Craddick Partners'] prospects causing [Craddick Partners] to lose them."

3. PB Ventures refused to service the business and prospects that Craddick Partners brought to PB Ventures.

4. PB Ventures failed to "timely acquire the personnel, warehouse and yard, forklifts, trucks and other equipment required by the industry, necessary to service [Craddick Partners'] prospects."

5. PB Ventures failed to pay Craddick Partners its monthly payments as agreed.

The EnerSciences Parties and PB Ventures filed a general denial, but they later amended their answers, asserted counterclaims, and moved to compel arbitration. They also filed a plea to the jurisdiction and asserted that the trial court lacked subject-matter jurisdiction over Craddick Partners' claims because their claims fell within the ambit of the arbitration clause in the Sales Agreement. They also asserted in their motion to compel arbitration that Craddick Partners artfully pleaded tort actions to avoid arbitration but that Craddick Partners' claims arose out of alleged contractual breaches of the Sales Agreement.

### III. *Discussion and Analysis*

Craddick Partners asserts that the trial court erred when it granted Appellees' motion to compel arbitration because the EnerSciences Parties were not signatories to the Sales Agreement. Craddick Partners also argues that the trial court erred when it dismissed Craddick Partners' declaratory judgment action against PB Ventures because the arbitration clause in the Sales Agreement expressly excluded claims for declaratory relief.

### A. *Issue One: Nonsignatories' Authority to Compel Arbitration*

Craddick Partners argues in its first issue that the EnerSciences Parties, as nonsignatories to the Sales Agreement, lacked standing to compel arbitration. As we explain below, the EnerSciences Parties had standing to compel arbitration.

Generally, a party must sign an arbitration agreement before being bound by it. *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011). However, the Texas Supreme Court has recognized that direct-benefits estoppel may permit a nonsignatory to compel a signatory's claims to arbitration "if liability arises solely from the contract or must be determined by reference to it." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005). Thus, liability will arise from the contract if the signatory plaintiff's right to recover and its damages depend on the existence of the contract containing the arbitration clause. *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306 (Tex. 2006). Direct-benefits estoppel, however, still requires "a colorable claim to the benefits; a meddlesome stranger cannot compel arbitration by merely pleading a claim that quotes someone else's contract." *Weekley Homes*, 180 S.W.3d at 134. In short, a party cannot "'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v.*

*Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). We analyze this issue based on the substance of the claim—not artful pleading. *Weekley Homes*, 180 S.W.3d at 131–32.

Craddick Partners asserts that its claims against the EnerSciences Parties arose from general obligations imposed by law—not the Sales Agreement. *See In re Vesta Ins. Grp.*, 192 S.W.3d 759, 761 (Tex. 2006) (noting that a nonsignatory may not compel arbitration if liability does not arise from the underlying agreement but instead "arises from general obligations imposed by law"). However, Craddick Partners cites no relevant authority on this point and, instead, relies on a conclusory statement that its pleadings "make clear that the claims against the [EnerSciences Parties] arise from general obligations imposed by law." We review Craddick Partners' negligent misrepresentation, negligence, and tortious interference claims to determine whether its claims arise from general obligations imposed by law or whether they arise from the Sales Agreement.

### 1. Negligent Misrepresentation Claim

Craddick Partners alleged that the EnerSciences Parties negligently misrepresented that they would timely acquire the personnel, warehouses, yards, forklifts, trucks, and other equipment necessary to "assist [PB Ventures] with its contract with [Craddick Partners]." Craddick Partners further alleged that it justifiably relied on representations made by the EnerSciences Parties that they would "promote and solicit sales and would do the business necessary to accommodate and properly handle [Craddick Partners'] prospects." Craddick Partners asserts that these obligations were independent of the Sales Agreement it signed with PB Ventures.

The EnerSciences Parties may invoke the arbitration clause of the Sales Agreement, despite their nonsignatory status, if Craddick Partners' claims depended on the Sales Agreement. *See Meyer*, 211 S.W.3d at 306–07. The duties that

5

Craddick Partners contends the EnerSciences Parties breached arose out of the Sales Agreement. Craddick Partners' claim not only "makes reference to or presumes the existence" of the Sales Agreement, but also relies on it for viability. *See Meyer*, 211 S.W.3d at 306 (quoting *Grigson*, 210 F.3d at 527). Craddick Partners cites no authority that would have obliged the EnerSciences Parties to acquire personnel, warehouses, yards, forklifts, or trucks merely to accommodate Craddick Partners' business prospects—let alone that would have obliged them to sell their products to Craddick Partners' prospects. The Sales Agreement provided that PB Ventures was "responsible to provide, *or to cause one of the other EnerSciences Subsidiaries to provide*, all personnel to [perform its obligations under the Sales Agreement]" (emphasis added). These obligations included establishing a warehouse and operations yard and employing business development personnel to support Craddick Partners in its obligations under the Sales Agreement. We hold that the EnerSciences Parties were entitled to invoke the arbitration clause and that Craddick Partners was estopped, through direct-benefits estoppel, from refusing arbitration. *See id.* at 305; *Weekley Homes*, 180 S.W.3d at 132.

### 2. Negligence Claim

Craddick Partners alleged that the EnerSciences Parties breached their duty to "exercise reasonably prudent and ordinary care in connection with handling [Craddick Partners'] prospects." Any duty that the EnerSciences Parties had to Craddick Partners that concerned service to Craddick Partners' clients arose out of the Sales Agreement and did not arise out of another contract or a common law obligation. We find no evidence in the record of additional contracts between Craddick Partners and the EnerSciences Parties. Consequently, if such a duty existed, it arose from the Sales Agreement. Therefore, the EnerSciences Parties were entitled to compel Craddick Partners' general negligence claim to arbitration through direct-benefits estoppel. Craddick Partners cannot assert that the

EnerSciences Parties had a duty derived from the Sales Agreement and, at the same time, assert that the EnerSciences Parties cannot invoke the arbitration clause found in the Sales Agreement. *See Meyer*, 211 S.W.3d at 306; *Weekley Homes*, 180 S.W.3d at 132. We hold that the trial court did not err when it granted Appellees' motion to compel Craddick Partners to arbitrate its negligent misrepresentation and general negligence claims. *See Meyer*, 211 S.W.3d at 306; *Weekley Homes*, 180 S.W.3d at 132; *see also In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007).

### 3. *Tortious Interference with Contract Claim*

Craddick Partners also asserted a "tortious interference" claim. Craddick Partners clarified at oral argument that its tortious interference claim was interference *with a contract*. Tortious interference with a contract requires, in relevant part, a valid contract "subject to interference." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997, pet. denied). Craddick Partners' claim is that the EnerSciences Parties interfered with the Sales Agreement.

"[T]he boundaries of direct-benefits estoppel are not always clear, nonparties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law." *Vesta*, 192 S.W.3d at 761. In this regard, tortious interference claims are particularly difficult to classify. In *Vesta*, the Texas Supreme Court noted that tortious interference claims arise both from general law and the underlying contract; more specifically, the court observed that liability for tortious interference arises from the general law, but non-liability arises from connections with the contract. *Id.* at 761–62. The court concluded that tortious interference claims between a signatory and agents or affiliates of the other signatory arise more from the contract than general law. *Id.* at 762. "Thus, if two companies sign a contract to arbitrate disputes, one cannot avoid it by recasting a contract dispute as a tortious interference claim against an owner, officer, agent, or *affiliate* of the other." *In re Kaplan Higher Educ. Corp.*,

235 S.W.3d 206, 209 (Tex. 2007) (emphasis added) (citing *Vesta*, 192 S.W.3d at 762–63). However, a signatory is still not "required to arbitrate a tortious interference claim against a complete stranger to his contract and its arbitration clause." *Vesta*, 192 S.W.3d at 763.

The Sales Agreement clearly outlined the corporate structure of the parties as well as their roles in the venture. The Sales Agreement specifically stated that EnerSciences owned 100% of PB Ventures, Chem Rock, and Rapid Drilling. It further elaborated that EnerSciences formed PB Ventures to market and sell Chem Rock and Rapid Drilling products to Craddick Partners' prospects. With respect to performance, as discussed above, the Sales Agreement established the circumstances under which the EnerSciences Parties were to perform PB Ventures' obligations under the Sales Agreement. In this sense, the EnerSciences Parties were not only known affiliates of PB Ventures, but also were an integral component of the transaction. The EnerSciences Parties were all "affiliates"[4] and were not strangers to the Sales Agreement. Under these circumstances, Craddick Partners may not avoid arbitration by recasting its claim as tortious interference. *See Kaplan*, 235 S.W.3d at 209; *PER Grp., L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 387 (Tex. App.—Dallas 2009, no pet.).

Craddick Partners' tortious interference claim also relied on the Sales Agreement for viability. Craddick Partners asserted that the EnerSciences Parties took its prospect list and "tortiously interfere[d] with [its] prospects, and tortiously interfered with [its] prospective relations with all of [its] prospects." Craddick Partners concedes that it was contractually obligated under the Sales Agreement to

---

[4]As noted above, PB Ventures, Chem Rock, and Rapid Drilling were all wholly owned by EnerSciences. The Business Organizations Code defines "[a]ffiliate" as "a person who controls, is controlled by, or is under common control with another person." TEX. BUS. ORGS. CODE ANN. § 1.002(1) (West Supp. 2015).

provide its prospects to PB Ventures and complains that PB Ventures never paid for them.

Craddick Partners claimed that the EnerSciences Parties wrongfully utilized Craddick Partners' prospect list—a list that was being purchased on their behalf, as outlined in the Sales Agreement. Nevertheless, if PB Ventures did not breach the Sales Agreement, then there would be no claim for "tortious interference." Craddick Partners' claim necessarily relies on the Sales Agreement to determine liability. The EnerSciences Parties were also entitled to invoke the arbitration provision through direct-benefits estoppel. *See Meyer*, 211 S.W.3d at 306; *Parker v. Schlumberger Tech. Corp.*, 475 S.W.3d 914, 924 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 443 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We hold that the EnerSciences Parties had standing to compel Craddick Partners' tortious interference claim to arbitration. *See Kaplan*, 235 S.W.3d at 209; *Meyer*, 211 S.W.3d at 306; *Vesta*, 192 S.W.3d at 762–63; *Cooper*, 475 S.W.3d at 443; *PER Grp.*, 294 S.W.3d at 387. Therefore, the trial court did not err when it granted Appellees' motion to compel Craddick Partners to arbitrate its tortious interference claim. *See Meyer*, 211 S.W.3d at 306; *Vesta*, 192 S.W.3d at 762–63.

*B. Issue Two: Signatory's Authority to Compel Arbitration*

Craddick Partners argues in its remaining issue that the Sales Agreement excluded a proper declaratory judgment action from arbitration. The main purpose of the declaratory judgment statute is to create a speedy and effective means for the determination of the rights of the parties when a controversy has arisen but a wrong has not yet been committed. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (citing *Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945)); *City of Watauga v. Taylor*, 752 S.W.2d 199, 205 (Tex. App.—Fort Worth 1988, no writ). Thus, a declaratory judgment declares the rights and duties or the status of the

parties. *City of Watauga*, 752 S.W.2d at 205. But "parties to an arbitration agreement may not evade arbitration through artful pleading." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1318 (11th Cir. 2002)); *accord Vesta*, 192 S.W.3d at 762–63; *Weekley Homes*, 180 S.W.3d at 131–32.

PB Ventures asserts that Craddick Partners' declaratory judgment action against PB Ventures was an artfully pleaded breach of contract claim. We agree. Craddick Partners sought a declaration "that the Sales Representative Agreement . . . terminated [and] that as a result of the termination . . . the $850,000 of monthly payment amounts owed at the termination of this Agreement is owed to [Craddick Partners]." However, declaratory relief is inappropriate where the only issue involved is a question of fact. *City of Watauga*, 752 S.W.2d at 205. Craddick Partners requested relief and remedies that would have required the trial court to make several impermissible findings of fact. For example, before the trial court could have determined whether Craddick Partners was entitled to an $850,000 judgment under the Sales Agreement, it would have had to determine whether PB Ventures breached the Sales Agreement. Next, the trial court would have had to determine when PB Ventures breached the Sales Agreement and then determine the proper amount of damages. Finally, the trial court would have had to determine if Craddick Partners breached the Sales Agreement before the alleged breach by PB Ventures.

Craddick Partners asked the court to complete a trial for breach of contract and award damages, but did so under the rubric of a declaratory judgment action. The trial court could not make the findings requested by Craddick Partners without exceeding the purpose of the Texas Declaratory Judgments Act. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (noting that declaratory judgment actions seeking to "establish a contract's validity, to enforce

performance under a contract, or to impose contractual liabilities" upon a party are suits against the party); *Riley v. Ferguson*, No. 01-98-00350-CV, 1999 WL 191654, at *4 (Tex. App.—Houston [1st Dist.] Apr. 8, 1999, pet. denied) (not designated for publication) ("[T]he determination of whether a party has breached a contract, while affecting a party's rights or status, is not a declaration of a right or status and, therefore, is not the proper subject of a declaratory judgment."); *see also City of Watauga*, 752 S.W.2d at 205. We hold that the trial court did not err when it granted Appellees' motion to compel arbitration as to Craddick Partners' claims against PB Ventures. *See Merrill Lynch*, 235 S.W.3d at 188; *IT-Davy*, 74 S.W.3d at 855; *Ferguson*, 1999 WL 191654, at *4; *City of Watauga*, 752 S.W.2d at 205.

IV. *This Court's Ruling*

We affirm the order of the trial court.


MIKE WILLSON

JUSTICE


July 14, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.