

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00410-CV

**COBRA ACQUISITIONS LLC** and Arty Straehla,
Appellants

v.

**AL GLOBAL SERVICES, LLC**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CI22581
Honorable Antonia Arteaga, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: April 22, 2020

REVERSED AND REMANDED

Cobra Acquisitions LLC ("Cobra") and Arty Straehla ("Straehla") appeal the trial court's interlocutory order staying arbitration of two declaratory judgment claims involving business dealings with AL Global Services, LLC ("AL Global"). We conclude (1) the claims in question are within the scope of the parties' arbitration agreement; (2) even though Straehla did not sign the arbitration agreement, he was entitled to enforce it against AL Global as Cobra's agent; and (3) the trial court was not authorized to stay arbitration based on alleged procedural defects. We, therefore, reverse the order staying arbitration, and remand the case to the trial court for entry of

an order denying the motion to stay arbitration and ordering the parties to arbitrate the claims in question.

## BACKGROUND

Appellant Cobra is a utility infrastructure services provider, which includes utility infrastructure repairs following natural disasters. Appellant Arty Straehla is Cobra's chief executive officer. Appellee AL Global provides security services, aviation, and logistical support to businesses.

In 2017, in the wake of Hurricane Maria, the Puerto Rico Electric Power Authority hired Cobra to perform reconstruction and repair of Puerto Rico's power grid. On October 20, 2017, Cobra and AL Global executed a master services agreement ("MSA") under which AL Global agreed to provide security and logistical support for Cobra while it performed reconstruction and repair work in Puerto Rico. Straehla signed the MSA as Cobra's "CEO." Thereafter, AL Global subcontracted a portion of its security and logistical work under the MSA to Espada Logistics & Security, LLC, an entity principally owned by Jim Jorrie.

In August 2018, Cobra advised AL Global that the security and logistical support on the Puerto Rico project would be directed to another company, Espada Caribbean, and that Cobra would no longer use AL Global for these services. Jorrie had ownership interests in both Espada Caribbean and AL Global, but Jorrie's interest in AL Global was less substantial than his interest in Espada Caribbean.

On November 30, 2018, Jorrie filed the underlying suit in the trial court, seeking a court-ordered wind up and termination of AL Global. In response, AL Global filed a counterclaim and third-party petition, asserting various claims, including claims for breach of fiduciary duty and conspiracy, against Jorrie, Espada Logistics, and Espada Caribbean. Several months later, in

February 2019, Cobra intervened in this suit for the purpose of interpleading payments into the court's registry, which it owed to AL Global under the MSA.

On April 12, 2019, Cobra and Straehla filed a demand for arbitration with the American Arbitration Association ("AAA"). In their arbitration demand, Cobra and Straehla requested declaratory judgments that: (1) Cobra and Straehla "were not obligated to renew or extend the MSA [with AL Global] and [were] not precluded from entering into a contract with Espada Caribbean;" (2) "no valid oral contract exists between Cobra and [AL Global];" and (3) AL Global "is not entitled to any attorneys' fees or accrued interest in connection with the MSA payment." The arbitration demand referenced the interpleader action filed in the trial court, noting "[t]he remedy of an interpleader is not available in arbitration and thus it must be pled in state court to protect Cobra from the potential of multiple lawsuits and to resolve the conflicting claims of ownership over the MSA payment." Finally, the demand stated the arbitration should take place in Oklahoma City, Oklahoma pursuant to the terms of the MSA.

In response to the demand, AL Global moved to stay the arbitration, arguing (1) none of the claims in the arbitration demand were subject to arbitration; (2) Straehla could not enforce the arbitration provision because he was a nonsignatory to the MSA; (3) Cobra and Straehla failed to invoke arbitration by providing proper notice; (4) the arbitration process was not governed by AAA rules; and (5) venue was not proper in Oklahoma. Cobra opposed the motion to stay, arguing (1) the claims in the arbitration demand were within the scope of the arbitration provision; (2) Straehla was entitled to enforce the arbitration agreement under theories of agency, direct-benefits equitable estoppel, or alternative estoppel; (3) the arbitration provision was invoked by providing proper notice; (4) the arbitration process was governed by AAA rules; and (5) venue was proper in Oklahoma.

After a hearing, the trial court signed an order granting the motion to stay as to the first and second claims in the arbitration demand but not as to the third claim in the arbitration demand. Specifically, the trial court's order states: "The current arbitration proceeding with the American Arbitration Association . . . is STAYED except for as to matters that pertain [to] the MSA Payment that is subject to Cobra's Intervention and Interpleader in this state court proceeding." Cobra and Straehla appealed the order partially staying their arbitration demand.

## STANDARD OF REVIEW

We review a trial court's order staying arbitration for an abuse of discretion. *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 102 (Tex. App.—San Antonio 2016, no pet.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Under this standard, we defer to the trial court's factual determinations supported by the record, but we review de novo the trial court's legal determinations. *Id.* When the trial court's order does not specify the ground for its ruling and no findings of fact or conclusions of law are filed, we uphold the trial court's ruling if any of the grounds presented to the trial court was proper. *Id.* (citing *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984)).

## SCOPE OF THE ARBITRATION PROVISION

Cobra and Straehla argue the claims in their arbitration demand were within the scope of the arbitration agreement and, therefore, the trial court could not have granted the motion to stay on the ground that their claims were not covered by the arbitration agreement.

"Arbitration is [] governed by two fundamental principles: arbitration agreements are contracts that must be enforced according to their terms, and a party cannot be compelled to arbitrate any dispute absent an agreement to do so." *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019). To ensure that parties are not forced to arbitrate matters without their agreement, whether the parties have actually agreed to submit a particular dispute to

arbitration is generally a matter for judicial determination. *Id*. Therefore, unless the parties have clearly and unmistakably agreed otherwise, courts decide the "gateway" matters of whether the parties have a valid arbitration agreement and whether an arbitration clause in a binding contract applies to a particular kind of controversy. *Id*. "Gateway arbitrability issues are distinct from procedural or subsidiary questions that grow out of an arbitrable dispute and are presumptively for an arbitrator to decide." *Id*. Examples of procedural or subsidiary questions include fulfillment of prerequisites to arbitration, notice, limitations, laches, and estoppel. *Id*. at 525-26.

In the present case, no one disputes that the MSA contains a valid arbitration agreement. Instead, the dispute focuses on the scope of the arbitration agreement, that is, whether the arbitration agreement in the MSA applies to the two declaratory judgment claims in question.

The scope of an arbitration agreement is a gateway matter to be decided by the court and not by the arbitrator. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Because both Texas and federal policies favor arbitration, we must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). "The presumption in favor of arbitration is so compelling that a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation that would cover the dispute at issue." *Id*. (internal quotations omitted) (emphasis in original). "Whether the claims in dispute fall within the *scope* of a valid arbitration agreement" is a question of law that we review de novo. *Id.* We must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. (internal quotations omitted). In deciding an arbitration agreement's scope, we focus on the factual allegations in the demand or petition and not the causes of action asserted. *Id*.

We construe the provisions of an arbitration agreement under state contract law. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding). "Our primary concern when we construe a written contract is to ascertain the parties' true intent as expressed in the contract." *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011). We ascertain the parties' intent by examining the contract's plain language. *DeWitt Cty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

Here, the MSA states:

> 13.1  *Any disputes* of any nature which arise between the parties, *with regard to the interpretation of this Agreement or relative to the performance of any of the contractual obligations,* whether such disputes arise before, during or after the execution of the Agreement, shall, if possible, be amicably settled. Notice of a dispute shall be served by one party upon the other by written notice.

> 13.2  *Any dispute which cannot, in the opinion of either party, be amicably settled arising in connection with the present Agreement shall be settled by arbitration.* Within thirty (30) days of a party's notice to arbitrate, each party will appoint one arbitrator, with a third arbitrator to be appointed and mutually agreed between the two parties' appointed arbitrators. If the parties are unable to agree on the appointment of arbitrators within one (1) month of the non-complaining party's receipt of the complaining party's dispute, the appointment shall be subject to the ruling of the American Arbitration Association. In the event of any appeal or other allowable action, from an arbitration order/decision, the Parties agree to submit to the exclusive jurisdiction of the Oklahoma County District Court and/or the Federal District Court for the Western District of Oklahoma and agree that venue shall lie in Oklahoma County.

(emphasis added).

The parties take vastly different approaches in construing these provisions. AL Global argues that section 13.1 and section 13.2 must be construed together. Under AL Global's approach, in section 13.1, the parties expressed their intent to "amicably settle" "if possible" "any disputes of any nature which arise between the parties, with regard to the interpretation of this Agreement or relative to the performance of any of the contractual obligations." Under section 13.2, the parties expressed their intent to arbitrate only disputes "which arise between the parties, with regard to

the interpretation of this Agreement or relative to the performance of any of the contractual obligations" and "which cannot be amicably settled." In other words, AL Global argues that section 13.1 operates to limit the scope of the disputes that the parties intended to arbitrate. AL Global further argues that under this narrow construction of section 13.2, the parties' arbitration agreement does not cover Cobra and Straehla's claims regarding renewal or extension of the MSA and the existence of a valid oral contract.

On the other hand, Cobra takes the approach that the arbitration agreement consists of section 13.2 alone and this provision expresses the parties' intent to arbitrate "any dispute" "in connection with the present Agreement." Not surprisingly, Cobra maintains that the language employed in section 13.2 is extremely broad and encompasses all the claims included in the arbitration demand. Alternatively, Cobra argues that even if section 13.1 must be construed as operating to limit section 13.2, the claims in question are nevertheless encompassed by the arbitration agreement.

Based on the plain language of the MSA, we believe section 13.1 and section 13.2 should be construed together. Section 13.1 expresses the parties' intent to amicably settle a broad range of disputes "with regard to the interpretation of this Agreement" or "relative to the performance of any of the contractual obligations." Significantly, section 13.2 expressly references the settlement procedure set out in section 13.1, expressing the parties' intent to arbitrate "any dispute" that cannot be "amicably settled." Both section 13.1 and section 13.2 use the phrase "any dispute," which generally connotes an arbitration agreement that is broad in scope. *See Bray*, 499 S.W.3d at 105 (noting that an agreement to arbitrate "all civil disputes" was "very broad in scope"). Here, however, section 13.2 refers to "any dispute" "which cannot" "be amicably settled." Therefore, to be subject to arbitration under section 13.2, a dispute must satisfy section 13.1's requirements,

including the requirement that it concern "the interpretation of this Agreement" or "the performance of any of the contractual obligations."

But even under this construction, we conclude the claims in question are within the scope of the parties' arbitration agreement. We examine the factual allegations in the arbitration demand. As to the first claim, Cobra and Straehla sought a declaration that "under the terms of the MSA" they were "under no obligation to renew or extend the MSA" and "were not precluded under the MSA from entering into a contract with Espada Caribbean." Notably, the MSA and its amendment contained express provisions governing the termination of the MSA, extensions of the MSA, and the end date of the MSA. As to the second claim, Cobra and Straehla sought a declaration that Cobra did not have a valid oral agreement with AL Global to extend the use of its services until the Puerto Rico project expired. Cobra and Straehla also sought a declaration from the arbitrator that "even if an oral agreement did exist, it is invalid under the terms of the MSA." Cobra and Straehla further alleged in the arbitration demand that an oral agreement would be barred by the merger provision in the MSA. Having examined the factual allegations of the claims presented in the arbitration demand, we conclude they necessarily depend on interpretations of the MSA and the parties' rights and obligations under the MSA.

The arbitration agreement here is clearly "susceptible of an interpretation which would cover the dispute at issue." *See Henry*, 551 S.W.3d at 115. We hold the first and second claims in the arbitration demand were within the scope of the parties' arbitration agreement. Because the claims in question were within the scope of the arbitration agreement, the trial court could not have properly granted the motion to stay arbitration on the ground that the claims were not covered by the arbitration agreement in the MSA.

## ENFORCEMENT BY A NONSIGNATORY

AL Global argued in the motion to stay arbitration that Straehla could not enforce the arbitration agreement because he did not sign the MSA. Cobra and Straehla countered that Straehla was entitled to enforce the arbitration agreement under theories of agency, direct-benefits, equitable estoppel, or alternative estoppel. On appeal, Cobra and Straehla argue the trial court's order partially staying arbitration cannot be upheld based on Straehla's status as a nonsignatory to the MSA.

Whether a nonsignatory can compel arbitration pursuant to an arbitration clause is generally a gateway matter to be decided by the court. *Weekley Homes*, 180 S.W.3d at 130. "[A]gents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories . . . . Thus, if two companies sign a contract to arbitrate disputes, one cannot avoid it by recasting a contract dispute as a tortious interference claim against an owner, officer, agent or affiliate of the other." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding). Additionally, "it is impractical to require every corporate agent to sign or be listed in every contract." *Id*. Although not every arbitration clause "automatically cover[s] all corporate agents or affiliates," "when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent or affiliate was pulling the strings." *Id*. at 210.

The undisputed evidence shows that Straehla signed the MSA on Cobra's behalf in his capacity as its CEO. Thus, the evidence indicates Straehla was authorized to act as Cobra's agent and was subject to Cobra's control. In light of the undisputed evidence and the substance of the disputes to be arbitrated—the interpretation of the MSA and the parties' rights and obligations under the MSA—we hold that Straehla was entitled to enforce the arbitration agreement against AL Global under an agency theory. *See Hart of Tex. Cattle Feeders, LLC v. Bonsmara Nat. Beef*

*Co., LLC*, 583 S.W.3d 705, 711-12 (Tex. App.—Amarillo 2019, pet. granted) (holding nonsignatory owners and officers could invoke an arbitration clause to enforce the arbitration of a dispute arising out of the agreement against signatories); *Glassell Producing Co Inc. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (holding claims against nonsignatory president of company were subject to arbitration when company was a signatory to the arbitration agreement).

Having concluded that Straehla was entitled to enforce the arbitration agreement, the trial court could not have stayed arbitration on the ground that Straehla was not a signatory to the MSA.

### PROCEDURAL GROUNDS

Cobra and Straehla further contend the trial court could not have properly granted the motion to stay arbitration based on any of the procedural grounds asserted by AL Global. Cobra and Straehla point out the trial court was not authorized to stay arbitration based on notice requirements, arbitration rules, or venue because they are procedural or subsidiary matters that must be decided by the arbitrator, not by the trial court.

As a preliminary matter, the record indicates the trial court did not base its ruling on any of the procedural grounds in the motion to stay arbitration. In its motion to stay arbitration, AL Global presented the procedural grounds as across-the-board reasons to stay arbitration as to all claims in the arbitration demand, arguing that "even if certain claims are subject to arbitration," none of the claims could be arbitrated because (1) Cobra and Straehla failed to comply with the notice provision in the MSA, (2) the parties "never consented to the application of the AAA rules to the arbitration," and (3) "even if arbitration should proceed, venue is not proper in Oklahoma." Although the trial court's order stays arbitration as to two claims, it also allows a third claim to proceed to arbitration. Because the trial court permitted one claim to proceed to arbitration (a declaration that AL Global is not entitled to attorneys' fees or accrued interest in connection with

the MSA payment), it apparently did not base its ruling on AL Global's across-the-board complaints about notice requirements, AAA rules, or venue.

But even if the trial court did grant the motion to stay arbitration based on procedural grounds, it was improper to do so. It is well-established that procedural matters are reserved for the arbitrator and are not matters courts are permitted to decide. "[I]ssues of procedural arbitrability," that is, "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 123 S.Ct. 588, 592 (2002) (internal quotations omitted); *see B.G. Group, PLC v. Republic of Arg.*, 134 S.Ct. 1198, 1206-07 (2014); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 (Tex. 2015). Similarly, questions about which rules will govern an arbitration proceeding or arbitral venue "belong[] to the arbitrators and not to the courts." *Academy, Ltd. v. Miller*, 405 S.W.3d 152, 156 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (holding "the trial court erred in straying past the gateway and into the arbitrators' presumptive arena by addressing whether the parties agreed to formal AAA administration and ordering that they did not."); *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2nd Cir. 2011) (holding "venue is a procedural issue that" "arbitrators should address in the first instance" and recognizing that two other federal circuit courts have held that disputes about forum selection clauses in arbitration agreements "raise presumptively arbitrable procedural questions.").

We conclude the trial court could not have properly stayed arbitration based on the procedural grounds asserted in AL Global's motion.

## CONCLUSION

Because the motion to stay arbitration did not present a proper ground for staying arbitration, the trial court erred in granting the motion as to the two claims in question. Therefore,

we reverse the trial court's order partially staying arbitration, and remand the case to the trial court for entry of an order denying the motion to stay arbitration in its entirety and ordering the parties to arbitrate all claims in the arbitration demand.

Irene Rios, Justice